PEOPLE v LAMAR

Docket No. 86074. Submitted March 11, 1986, at Lansing. Decided
    May 27, 1986.

    Defendant, Paulette Lamar, was convicted of larceny in a build-
    ing and assault and battery and was sentenced to six months in
    jail on the larceny charge and thirty days on the assault and
    battery charge, Saginaw Circuit Court, Robert J. Gilbert, J.
    Just prior to trial, defendant moved to dismiss the case on the
    ground that the prosecutor failed to endorse all res gestae
    witnesses. The trial court denied the motion as late. During
    voir dire, defense counsel asked the panel of prospective jurors
    if they believed that because a person was arrested a crime had
    been committed. When eleven out of the twelve jurors re-
    sponded in the affirmative, defense counsel moved to dismiss
    the eleven for cause. The trial judge denied the motion on
    grounds that the jurors indicated that they would follow the
    instruction to the effect that they would only convict defendant
    if the prosecution introduced evidence of defendant's guilt
    beyond a reasonable doubt. Defendant appealed. Held:

        1. A trial court is required to excuse a juror whenever a
    challenge for cause clearly falls within one of the several
    grounds enunciated by the Michigan Court Rules. Such a
    showing is equivalent to a showing of bias or prejudice. Where
    the challenge does not clearly fall within one of the enumer-
    ated grounds, the trial court may exercise discretion in decid-
    ing whether to excuse the juror. Defendant's challenge of the
    prospective jurors did not fall clearly within any of the enumer-
    ated grounds. Defendant did not establish that a fair and
    impartial decision could not be rendered. The Court of Appeals
    found no error in the trial court's exercise of discretion.

        2. The Court of Appeals found no miscarriage of justice in

REFERENCES

Am Jur 2d, Jury §§ 120 et seq.

Am Jur 2d, Larceny §§ 15, 16, 49, 103, 179.

Am Jur 2d, Trial §§ 623, 929.

Am Jur 2d, Witnesses § 2.

See the annotations in the ALR3d/4th Quick Index under Jury and
    Jury Trial; Larceny; Witnesses.

the trial court's failure to give an unrequested instruction on the failure to produce res gestae witnesses.

3. The charging of shoplifters with larceny in a building with its maximum sentence of four years imprisonment does not contravene the Eighth Amendment prohibition against cruel and unusual punishments.

4. Defendant's sister, Pamela Lamar, and the cashier at lane 14 were res gestae witnesses to the larceny in a building whom the prosecution must endorse and produce.

5. Other customers at checkout lane 14 would be res gestae witnesses to the larceny in a building whom the prosecution must endorse and produce if they can be identified and if they saw defendant.

Affirmed as to the assault and battery. Remanded with instructions as to the larceny in a building.

MACKENZIE, P.J., dissented in part. She dissented from the majority's holding as to the larceny in a building res gestae witnesses. She noted that the elements of the crime of larceny in a building are (1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or the personal property of another, (5) the taking must be without the consent and against the will of the owner, and (6) the taking must be done within the confines of the building, and would hold that the crime was completed prior to defendant's going through lane 14 and that the persons suggested by defendant as being res gestae witnesses were not res gestae witnesses. She would affirm.

### OPINION OF THE COURT

1. JURY — CHALLENGE FOR CAUSE — COURT RULES.

A trial court is required to excuse a juror whenever a challenge for cause clearly falls within one of the several grounds enunciated by the Michigan court rules; such a showing is equivalent to a showing of bias or prejudice; where the challenge does not clearly fall within one of the enumerated grounds, the trial court may exercise discretion in deciding whether to excuse the juror (GCR 1963, 511.4).

2. TRIAL — APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

A verdict will not be set aside because of an alleged error in the instructions where no objection was made unless it has resulted in a miscarriage of justice; a miscarriage of justice occurs when the erroneous or omitted instructions pertain to a basic and controlling issue in the case.

3. LARCENY — LARCENY IN A BUILDING — SHOPLIFTING — CRUEL AND UNUSUAL PUNISHMENT.

The charging of shoplifters with larceny in a building with its maximum sentence of four years imprisonment does not contravene the Eighth Amendment prohibition against cruel and unusual punishments (US Const, Am VIII).

4. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW.

Res gestae witnesses are witnesses whose testimony may aid in making a fair presentation of the res gestae of the crime charged and may be necessary to protect the accused from being the victim of a false accusation; persons at the scene of a crime are presumed to be res gestae witnesses, and the prosecution must prove otherwise to escape the duties of endorsement and production.

5. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW.

Every reasonable doubt should be resolved in favor of endorsing and producing a res gestae witness when a defendant insists on his rights but the decision of the trial court as to the res gestae status of a witness will not be overturned on appeal unless clearly erroneous; a finding is clearly erroneous when the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed.

6. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW — APPEAL.

A prosecutor has an affirmative duty to endorse all res gestae witnesses on the information and to produce them at trial, and if he does not comply, it is a defendant's responsibility to move for a hearing during trial or for a new trial prior to seeking appellate review; failure to move for a hearing or a new trial will normally preclude consideration of this issue on appeal, unless, absent review, manifest injustice would result.

7. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

The error of a prosecutor in failing to endorse and produce a res gestae witness is not obviated where the witness is produced by the defendant.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY MACKENZIE, J.

8. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW.

*A res gestae witness is one who was witness to some event in the continuum of a criminal transaction and whose testimony would aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense.*

9. Larceny — Larceny in a Building.

The elements of the crime of larceny in a building are (1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or the personal property of another, (5) the taking must be without the consent and against the will of the owner, and (6) the taking must be done within the confines of the building.

10. Larceny — Larceny in a Building — Removal of Property.

Removal of property is not an element of the crime of larceny in a building; case precedent holds that this crime is complete as soon as there is the slightest taking of property with the intent to steal it; concealment satisfies the criminal intent element.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Christopher S. Boyd*, Prosecuting Attorney, and *Bernard J. Coppolino*, Assistant Prosecuting Attorney, for the people.

*James Edward Jacobs*, for defendant.

Before: MacKenzie, P.J., and Allen and G. W. Crockett, III,* JJ.

Per Curiam. Defendant was convicted by jury on July 30, 1984, of larceny in a building, MCL 750.360; MSA 28.592, and assault and battery, MCL 750.81; MSA 28.276. Sentenced to six months imprisonment in the county jail on the larceny charge and a concurrent thirty-day term in the county jail on the assault and battery charge, defendant appeals as of right raising four issues.

On August 25, 1983, at approximately 6:00 p.m., Kevin Smith, loss prevention manager at the Meijer Thrifty Acres store in Saginaw, observed defendant pushing a grocery cart with a young child in the child seat. Defendant was wearing an ankle-length, loose fitting, black and white wraparound

* Recorder's court judge, sitting on the Court of Appeals by assignment.

dress. Smith saw defendant select a display model of a large iron, for sale for $34.97, and place it in the cart next to the child. Defendant then pushed the cart toward the east end of the store and Smith was joined by Patricia Beam, another store detective, and John Vowell, a third store detective. At this point defendant was observed lifting up her dress and placing the iron inside.

Smith, Beam and Vowell followed defendant throughout the store as she continued to shop. According to Smith, defendant appeared to be walking with a visible limp. Beam and Vowell described her gait as bow-legged. Approximately thirty-five minutes to one hour later, defendant approached the checkout lanes. At this point she met up with her sister, who was also shopping in the store. Defendant went through lane 14, paid for the items in her cart and waited for her sister who was behind her. When the two were through the checkout lane they consolidated their purchases into one cart. Defendant and her sister proceeded to push the cart through the first set of double doors going to the outside when Smith and Vowell stopped defendant and identified themselves.

The two detectives escorted defendant to the loss prevention office where Beam was waiting. Defendant told the men that she would go with them but that they were in trouble because she did not have anything. When defendant entered the office she sat down in a chair and the detectives heard a loud clunk. Smith asked defendant to return the merchandise or that they would have to get a female police officer to search her. At that point defendant reached inside her dress and pulled the iron out. Smith then asked defendant to turn over her purse, which defendant refused to do. Smith took the purse at which point defendant got out of

the chair and told them she was leaving. Smith told defendant that she could not leave. Defendant then began screaming "rape" and hitting, scratching, and kicking Smith.

The detectives then placed handcuffs on defendant and sat her down in a chair. Defendant's sister, Pamela Lamar, knocked on the door and the detectives let her in to help calm defendant. Defendant told Pamela that the detectives were beating, hitting and raping her. Pamela began screaming, shouting obscenities, and beating on Vowell. She yelled that she had a receipt for the iron, but left without giving it to Smith.

The Saginaw County Sheriff's Department was called by Beam. Deputies arrived some fifteen to twenty minutes later, finding defendant handcuffed in a chair in the loss prevention office. Defendant was arrested and taken to the Saginaw County jail. Smith, who had sustained bites on his left bicep, right elbow and arm, proceeded to the hospital where he was treated for his injuries and given a tetanus shot.

At trial, defendant testified that she had two large wastebaskets in her grocery cart when she picked up the display iron. She put the iron in the cart underneath the baby seat. She met up with her sister by women's clothing, continued to shop around and met her sister again at the checkout counter. She put the items she was going to purchase, which included a mattress cover, a bathroom rug and a toilet seat cover, on the counter. She left the two large wastebaskets in the grocery cart. Defendant testified that she forgot that the iron was in the grocery cart. She paid for all the other items, and stopped and waited for her sister. Her sister wanted to buy a lottery ticket, so they stopped in the middle of the aisle. At that point,

two men grabbed her and forced her into the security office.

Defendant testified that Smith grabbed and touched her offensively and that Vowell called her a "black bitch" and told her, "You are all alike, you think you can come in the store and get away with anything." Defendant also testified that she did not know what was going on and attempted to leave and that, at that point, Smith pushed her into a chair, banged her head on the table and told her she could not leave. She explained that it was at that point that she struck back at Smith and kicked Smith in the groin. She denied having an iron under her skirt and stated that no iron was placed on the table in the security room.

Defendant offered as an exhibit a black, white and red patterned skirt which she and her sister testified she was wearing on the day in question. However, Smith, Beam and Vowell contended that the skirt offered as an exhibit was not the same one worn by defendant on the day in question. Defendant's exhibit was not a wraparound skirt and was shorter than ankle length.

Prior to trial, the prosecutor endorsed as witnesses Kevin L. Smith, John Vowell, Patricia L. Beam and Deputy Sheriff Michael Picklo. Just prior to trial, defendant moved to dismiss the case on the ground that the prosecutor failed to endorse all res gestae witnesses. The trial court denied the motion as late. During voir dire, defense counsel asked the panel of prosepective jurors if they believed that because a person was arrested a crime had been committed. When eleven out of the twelve jurors responded in the affirmative, defense counsel moved to dismiss the eleven for cause. The trial judge denied the motion on grounds that the jurors indicated that they would follow the instruction to the effect that they

would only convict defendant if the prosecution introduced evidence of defendant's guilt beyond a reasonable doubt. After deliberating for approximately one and one-half hours, the jury found defendant guilty of larceny in a building and assault and battery.

Of the four grounds of error asserted on appeal, three have little merit and may quickly be rejected. It is first claimed that the trial court erred reversibly when it rejected defendant's challenge for cause of eleven jurors. At voir dire defense counsel asked a panel of twelve prospective jurors if they believed that because a person was arrested a crime had been committed. Eleven out of the twelve responded in the affirmative, specifying that they believed a crime had been committed, but not necessarily that the person who was arrested committed it. Each juror indicated, however, that they could follow CJI 3:1:03, that the prosecutor must prove every element of the crime charged beyond a reasonable doubt before they could find defendant guilty.

A trial judge is given broad discretion in the voir dire examination of jurors. *McNabb v Green Real Estate Co,* 62 Mich App 500, 505; 233 NW2d 811 (1975). The trial court's decision regarding juror impartiality may be reversed only if it is a clear abuse of discretion. *Haisenleder v Reeder,* 114 Mich App 258, 266; 318 NW2d 634 (1982). GCR 1963, 511.4 lists thirteen grounds for challenges for cause. Pertinent to this case are numbers (4), that the person shows a state of mind which will prevent him from rendering a just verdict, and (5), that a person has opinions and conscientious scruples which would improperly influence his verdict. In *McNabb,* this Court found that Rule 511.4 requires a court to excuse a juror whenever a challenge for cause clearly falls within one of the

enumerated grounds. Such a showing is equivalent to bias or prejudice at common law. *McNabb, supra,* p 507. However, unless the challenge clearly falls within one of the enumerated grounds, the trial court may exercise its discretion. *Brownell v Brown,* 114 Mich App 760, 766-767; 319 NW2d 664 (1982).

In the instant case, the challenge did not *clearly* fall within subparagraph (4) or (5). Subparagraph (4) requires that the juror show a state of mind that will prevent him from rendering a just verdict. Subparagraph (5) requires that the challenged juror have opinions that would improperly influence his verdict. In the instant situation, each of the challenged jurors indicated that they would not render a verdict of guilty until the prosecutor had proven beyond a reasonable doubt each element of each crime charged. Defendant failed to show that any of the jurors had a state of mind or opinion which would improperly influence his verdict. The trial court denied the challenge for cause of the eleven prospective jurors on the basis that each juror indicated that he or she would follow CJI 3:1:03. This being so, the jurors do not fall within subparagraphs (4) or (5) and defendant has failed to establish that a fair and impartial decision could not be rendered. Accordingly, we find no error on this issue.

It is next asserted that the trial court erred by failing to give CJI 5:2:14. Defendant did not object to the trial court's failure to give this instruction. Furthermore, nothing in the record indicates that the defendant requested the instruction be given. When no objection is made to an alleged error in the instructions, a verdict will not be set aside on the basis of such error unless it has resulted in a miscarriage of justice. *People v Federico,* 146 Mich App 776, 784-785; 381 NW2d 819 (1985); *People v*

*Trammell,* 70 Mich App 351, 354; 247 NW2d 311 (1976). A miscarriage of justice occurs when the erroneous or omitted instructions pertain to a basic and controlling issue in the case. *People v Sherman Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977), lv den 402 Mich 909 (1978). We find no error.

We next address the third claim of error, viz.: cruel and unusual punishment. Defendant does not claim that defendant's sentence of six months imprisonment in the county jail was cruel and unusual punishment. Instead, defendant claims that it was cruel and unusual punishment to charge her with a four-year felony for doing no more than stealing an iron valued at $34.97. According to defendant, the prosecutor should have charged no more than a ninety-day misdemeanor.

The identical issue was recently considered by this Court in *People v Walker,* 146 Mich App 371, 372-373; 380 NW2d 108 (1985). There defendant appealed his plea-based conviction for larceny in a building for stealing a bottle of hot sauce and a package of "Budding Beef" valued at $1.20. Sentenced to serve from one to four years in prison, defendant appealed claiming that "sentencing him for the four-year felony of larceny in a building constitutes cruel and unusual punishment for petty shoplifting." In the course of holding that the sentence was valid, the Court also reasoned that charging defendant with a felony rather than a misdemeanor was not cruel and unusual punishment under either the Eighth Amendment to the United States Constitution or art 1, § 16 of the Michigan Constitution.

In light of *Rummel,*[1] we believe that it does not

---

[1] *Rummel v Estelle,* 445 US 263; 100 S Ct 1133; 63 L Ed 2d 382 (1980).

contravene the Eighth Amendment to charge shop-
lifters, even where the value of the merchandise is
minor, with the four-year felony of larceny in a
building.

* * *

. . . Given that our Supreme Court recently
found that the prosecutor has the discretion to
charge the felony in shoplifting cases, that the
Legislature has not moved to reclassify the offense,
and that criminals are still being convicted by
juries of this offense, we do not find it indecent
that defendant, or other similarly situated defen-
dants, are charged with a felony offense. [146 Mich
App 374-375.]

We also note, as did the *Walker* Court, that
defendants charged with a felony rather than a
misdemeanor are now protected under the sen-
tence review standards established in *People v
Coles,* 417 Mich 523; 339 NW2d 440 (1983). If the
sentence imposed is excessive where defendant is
charged with a felony, relief is available under
*Coles.* In the instant case the sentence was ex-
tremely light and defendant is not raising the
issue. Accordingly, we find no error.

The remaining issue to be decided on appeal is
whether error occurred when the trial court de-
nied defendant's motion to dismiss on the ground
that the prosecutor had failed to endorse all res
gestae witnesses. On December 12, 1984, defendant
moved for a new trial alleging as error the same
issue. On June 7, 1985, the trial court issued a
two-page opinion denying the motion for a new
trial. We find this issue meritorious in connection
with defendant's conviction for larceny in a build-
ing.

Persons present at the scene of a crime are
presumed to be res gestae witnesses, and the pros-
ecution must prove otherwise to escape the duties

of endorsement and production. *People v Hicks,* 63 Mich App 595, 597; 234 NW2d 720 (1975), aff'd 406 Mich 862 (1979). Res gestae witnesses also encompass any other witnesses whose testimony may aid in making a fair presentation of the res gestae of the crime charged and may be necessary to protect the accused from being the victim of a false accusation. *People v Kayne,* 268 Mich 186, 194; 225 NW 758 (1934). Any reasonable doubt should be resolved in favor of endorsing and producing a person as a res gestae witness. *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976). The decision of a trial court concerning the status of an alleged res gestae witness will not be overturned on appeal unless clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

The prosecutor has an affirmative duty to endorse and produce all res gestae witnesses. MCL 767.40; MSA 28.980. If the prosecutor does not endorse and produce all res gestae witnesses, it is incumbent upon the defendant to move for an evidentiary hearing before, during, or after trial, in order to perfect the issue for appeal. *People v LeFlore,* 96 Mich App 557, 563; 293 NW2d 628 (1980), lv den 409 Mich 927 (1980).

Defendant contends that she was prejudiced by the prosecution's failure to endorse and produce (1) cashier No. 601 in lane 14; (2) defendant's sister, Pamela Lamar; and (3) other customers who went through lane 14 just before and just after defendant. For the reasons hereinafter set forth, we find that the cashier and Pamela Lamar were res gestae witnesses. We also find that, if they can be found and identified, customers in lane 14 at the

time defendant went through that lane are res gestae witnesses.

Defendant stated that she did not place the iron under her skirt. Instead, she testified, she placed the iron inside her grocery cart underneath the child seat. Defendant testified that she also had two large wastebaskets in the grocery cart and that when she arrived in the checkout lane she did not take the wastebaskets out of the grocery cart but, instead, took the price tags off and handed them to the cashier. The iron was apparently behind the wastebaskets and defendant forgot that it was there. Had the cashier in checkout lane 14 been endorsed and produced as a res gestae witness she would have been able to testify concerning whether or not defendant left the two wastebaskets in the grocery cart.

In addition, there was conflicting testimony concerning the type of skirt defendant was wearing on the day in question. Defendant produced as an exhibit a black, white and red skirt, which was not a wraparound, which she alleged she was wearing on the day in question. Smith, Beam and Vowell denied that defendant's exhibit was the same skirt she was wearing in the Meijer store. Had the cashier in checkout lane 14 been produced as a res gestae witness, she may have testified concerning the type of skirt defendant was wearing when she came through the line. In any event, there is a rebuttable presumption that witnesses present at the time and place of the crime are res gestae witnesses. The cashier was present at the time and place of the crime, i.e., the time and place at which defendant did not pay for the item. Placing the iron under the skirt was not the crime; going through the checkout lane without paying for the iron was the offense.

Pamela Lamar testified on behalf of defendant.

According to Pamela, defendant was wearing the skirt produced as defendant's exhibit 6. Further, Pamela testified that she had a receipt for the iron. Moreover, Pamela was present at the time and place of the crime. The error in the prosecutor's nonendorsement and nonproduction of Pamela is not obviated by the fact that defendant ultimately called Pamela as a witness. *People v Harrison,* 44 Mich App 578, 600; 205 NW2d 900 (1973). Neither the testimony of the cashier in checkout lane 14 nor the testimony of Pamela Lamar would have been cumulative, as it would have rebutted prosecution testimony that defendant had placed the iron inside a wraparound skirt. See *People v Norwood,* 123 Mich App 287; 333 NW2d 255 (1983).

The question of whether other customers going through checkout lane 14 at the time defendant went through the lane were res gestae witnesses presents a closer question. Although we are doubtful that they were identifiable or could be produced as witnesses at trial, they would be res gestae witnesses if they were in fact present and saw defendant. If they can be identified and found, they should be produced at a *Person-Robinson* hearing. They could have observed the contents of defendant's shopping cart and whether the iron was visible or concealed. There is no indication that the prosecutor attempted to ascertain the identity of any of the customers present when defendant went through checkout lane 14 or when she was apprehended in the aisle.

Our conclusion that res gestae witnesses were wrongfully not produced pertains to the larceny in a building charge. The trial court's rulings were correct with respect to the assault and battery charge. The assault and battery took place inside the security office. The only witnesses present at

that occurrence were Meijer personnel Smith, Vowell and Beam. They were properly endorsed and produced at trial. None of the witnesses requested by defendant viewed any part of the assault and battery on Smith. Therefore, a new trial is not warranted as to defendant's conviction for assault and battery.

As to the larceny in a building charge, an evidentiary hearing as to whether the witnesses were res gestae witnesses or whether the prosecutor used due diligence in finding them for trial was never held. Rather than granting a new trial this matter is remanded to the trial court for an evidentiary hearing as prescribed by *People v Willie Pearson,* 404 Mich 698; 273 NW2d 856 (1979), and *People v Robinson,* 390 Mich 629, 633-634; 213 NW2d 106 (1973). At the hearing the prosecutor shall produce or explain why he cannot produce the specified witnesses. If produced, the witnesses shall be examined with regard to their knowledge of the offense in question. If a lack of due diligence is found or if the witness is produced, the court shall ascertain whether the defendant has been prejudiced by the failure to produce the witness at trial.

If the defendant is found to be prejudiced, the court shall fashion an appropriate remedy. *People v Rivera,* 114 Mich App 419, 424-425; 319 NW2d 355 (1982). If on remand the prosecutor elects not to hold the required evidentiary hearing, defendant's conviction and sentence for larceny in a building is vacated. Defendant's conviction and sentence for assault and battery is affirmed.

MACKENZIE, J. *(dissenting in part).* I respectfully dissent from the majority's conclusion that res gestae witnesses were wrongfully not produced in the prosecution of the larceny in a building charge against defendant.

A res gestae witness is one who was witness to some event in the continuum of a criminal transaction and whose testimony would aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense. *People v Carter,* 415 Mich 558, 591; 330 NW2d 314 (1982). The decision of a trial court concerning the status of an alleged res gestae witness will not be overturned unless clearly erroneous. *People v Abrego,* 72 Mich App 176; 249 NW2d 345 (1976).

In this case, the trial court ruled:

> The only persons disclosed to the Court who witnessed the taking of the iron were listed on the information and produced at trial. There is no information that any other persons were res gestae witnesses.
> The witnesses requested by defendant were not res gestae witnesses but were witnesses who might possibly have supported defendant's theory of the case as to what happened after the iron was taken from the shelf.
> The defendant presented the defense that the iron was in the shopping cart and not under her dress and that she inadvertently failed to pay for the iron (forgetting that it was in the shopping cart). The witnesses pertaining to defendant's defense were available to defendant to subpoena and there was no showing of an effort made by defendant to even attempt to do so.

I cannot conclude that this reasoning was clearly erroneous. The defendant denies that a criminal transaction occurred. The "continuum of the criminal transaction" alleged by the people is necessarily related to the alleged sequence of events establishing the elements of the crime charged. The essential elements of larceny in a building were set forth in *People v Wilbourne,* 44

Mich App 376, 378; 205 NW2d 250 (1973), as
follows:

> (1) an actual or constructive taking of goods or
> property, (2) a carrying away or asportation, (3)
> the carrying away must be with a felonious intent,
> (4) the subject matter must be the goods or the
> personal property of another, (5) the taking must
> be without the consent and against the will of the
> owner[,] . . . [and] (6) the taking must be done
> within the confines of the building.

Concealment of the goods satisfies the element of
criminal intent. See, e.g., *People v Bradovich,* 305
Mich 329; 9 NW2d 560 (1943). As soon as criminal
intent is present, the slightest movement of the
goods within a self-service store constitutes aspor-
tation and the crime is complete. *People v Patricia
Williams,* 63 Mich App 531; 234 NW2d 689 (1975).
The removal of the goods from the store is not
part of the crime. See *Patricia Williams, supra.*

In this case, the circumstances surrounding the
alleged commission of the charged offense were as
follows: defendant removed an iron from the
store's shelf, placed it in her shopping cart, con-
cealed it beneath her skirt and continued to shop
about the store still carrying the iron. In my
opinion, applying the above principles, the "contin-
uum of the criminal transaction" in this case had
ceased before defendant joined her sister or dealt
with the store cashier. Accordingly, I agree with
the trial court that these persons were not res
gestae witnesses. Certainly defendant was free to
call them—and anyone else—in support of her
defense. It does not follow, however, that the
prosecutor was obligated to endorse or produce
them as witnesses.